**Elzie SMITH, a/k/a Elsie Smith and Essie Smith, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–06–00189–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 10, 2007.

Decided Oct. 25, 2007.

Rehearing Overruled Dec. 18, 2007.

---

**3.** We do not reach Maguire's second issue because it is rendered moot by our disposition of the first issue.

Paul D. Hoover, Paul Hoover and Associates, Texarkana, for appellant.

Tina Richardson, Asst. Dist. Atty., Clint Allen, Dist. Atty., Linden, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

Elzie Smith, a/k/a Elsie Smith and Essie Smith was convicted by a jury of possession of a controlled substance—after the trial court declined his plea of guilty—and the jury assessed his punishment at fifty years' imprisonment.

On appeal, Smith argues the conviction should be reversed because trial counsel was suspended from the practice of law at the time of the trial, because the trial court erred by failing to accept the guilty plea, and because the search that resulted in discovery of the contraband (cocaine) was unlawful.

We find no merit to the arguments and affirm.

**Statement of Facts**

Atlanta police officer Randy Cruson stopped Smith because he did not activate his turn signal 100 feet before making a left-hand turn at an intersection.[1] When the officer first confronted Smith, Cruson noticed that Smith had an odor of alcohol on his breath. However, Cruson did not ask Smith to submit to a field sobriety or breathalyzer test. Instead, Cruson looked in Smith's vehicle and noticed an open container of beer. At that point, Cruson did not search the vehicle for other open containers. Smith told Cruson the open container in question was the only contraband in the vehicle. Smith offered to retrieve the container, but Cruson did not let Smith back in the vehicle. Cruson alleged that the original purpose of the traffic stop had not been effectuated because the open container was still in the vehicle. However, he does not recall whether there was

---

1. Smith did turn on the turn signal while in    the intersection.

any liquid in the container. Cruson did not cite Smith for the traffic offense or the open container violation, but estimated that he would have needed about three minutes to write each citation.

Cruson became suspicious that the open container was not the only contraband in the vehicle. However, this belief was based solely on Smith's refusal to consent to a search of the vehicle.[2] During the traffic stop, Cruson called for a back-up unit, which arrived four to five minutes after being called. The back-up unit that came was a canine unit. The dog performed an open-air sniff of the vehicle, alerted to the driver's side door, and the dog handler found cocaine in the console of the vehicle.[3]

### Suspension of Counsel

■ Smith initially couches his contention in terms of a violation of the right to constitutionally effective counsel.[4] However, in his argument, he instead focuses on the public policy aspects of allowing an attorney to represent a party in court while the attorney is unauthorized to do so. Both Smith and the State concede that Clyde E. Lee (appellant's trial counsel) was on administrative leave due to an untimely payment of his required bar dues. At oral argument, counsel for Smith argued that, while Lee was suspended, he was "not a lawyer" and therefore Smith had a complete denial of his right to counsel. The Texas Court of Criminal Appeals addressed that argument in *Cantu v.*

*State*, 930 S.W.2d 594, 596–98 (Tex.Crim. App.1996), holding that "once an attorney has fulfilled the 'threshold' requirements for legal practice, a per se rule cannot be justified on a jurisdictional basis regardless of the subsequent change in status." *Id.* at 598. This reasoning does not apply to attorneys who were suspended or disbarred for substantive reasons. *Id.* at 601. It is not claimed that Lee was suspended for any substantive reason such as incompetence or conduct showing bad moral character. Therefore, based on *Cantu*, we do not find that Lee's suspension for failure to pay bar dues was a per se violation of Smith's Sixth Amendment right to counsel.

In *Hudson v. State*, 128 S.W.3d 367, 378 (Tex.App.-Texarkana 2004, no pet.), where Lee was also trial counsel, and was also practicing with a suspended license due to failure to complete mandatory continuing legal education requirements, we recognized that any practice of law during a suspension constitutes professional misconduct and subjects the member to discipline. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04, *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9). The suspension of trial counsel's law license before trial does not, however, result in a per se denial of Smith's Sixth Amendment right to effective assistance of counsel. *Cantu*, 930 S.W.2d at 602. Instead, an inquiry into the facts of the case and the

---

**2.** We do not suggest that refusing to consent to a search gives probable cause to conduct a nonconsensual search. To do so would eviscerate the Fourth Amendment—and penalize an individual for exercising constitutionally guaranteed rights.

**3.** The officer testified that he was trying to get in the vehicle to get the open container of beer.

**4.** The United States Constitution requires at a minimum that appointed or retained counsel provide a client with "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel constitutes a reversible error when the defendant shows: (1) that counsel's representation was deficient and (2) that the deficient performance prejudiced the defendant. *Id.* at 687, 104 S.Ct. 2052.

reason for the suspension is required. The Texas Court of Criminal Appeals recognized that "technical violations do not constitute a denial of counsel even when removing the defect would not retroactively restore counsel's good status." *Id.* at 598.

We again recognize that Rule of Professional Conduct 8.04(a)(11) specifically states that:

> a lawyer shall not ... engage in the practice of law when the ... lawyer's right to practice has been administratively suspended for failure to timely pay required fees or assessments or for failure to comply with Article XII of the State Bar Rules relating to Mandatory Continuing Legal Education....

TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(11), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9).

■ However, as pointed out by the case authorities, we recognize these are ethical rules governing the proper conduct of counsel and for purposes of professional discipline. *See Preamble: Scope Rules of Professional Conduct,*[5] tit. 2, subtit. G app. A (Vernon 2005). Practicing law when the lawyer's license is suspended is a violation of these rules and subjects the attorney to sanctions by the State Bar of Texas. However, violation of the Professional Rules of Conduct for attorneys by practicing law even though suspended from practice for nonpayment of dues does not invalidate the representation—unless the representation was sufficiently incompetent to violate the client's right to effective assistance of counsel.

Like the failure in *Cantu,* failure to timely pay bar dues is a technical violation

and is therefore not considered a per se denial of effective assistance of counsel. *Cf. Parrish v. State,* 840 S.W.2d 63 (Tex. App.-Amarillo 1992, no pet.). There is no claim that any acts or omissions of Lee in conducting the trial on Smith's behalf was deficient or ineffective.

The contention of error is overruled.

**Rejection of the Negotiated Plea of Guilty**

■ In exchange for a plea of guilty, the State had agreed to charge Smith with a second-degree felony by dropping the enhancement portion of the charge which changed the range of punishment. Both parties advocate at length in their respective briefs what the law is regarding whether the plea was voluntary. That, however, is not the relevant inquiry.

At the hearing on the guilty plea, the court stated, after Smith was inconsistent about his plea and reasons for it, that it did not believe the plea was voluntary, and refused to take the plea. After saying this, Smith attempted to rescue himself, saying, "I'll just go on and take it like it is, sir." The court declined the invitation. Immediately thereafter, as the trial on the merits commenced, the trial court clarified its ruling, stating that it did not accept the plea agreement and the guilty plea because Smith failed to meet the deadline set by the court for entering a negotiated plea with the State. The trial judge explained that, when the trial date was set, he told Smith in open court that negotiated plea agreements with the State could be made no later than two weeks before trial. The trial court implemented the "rule" to promote judicial efficiency and conserve judicial resources. Pursuant to law, the trial court offered Smith the option of pleading

---

**5.** TEX. DISCIPLINARY R. PROF'L CONDUCT, *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. A (TEX. STATE BAR R. art. X, § 9).

guilty and moving on to the sentencing phase of the trial without the benefit of the negotiated plea agreement—which was declined.

A negotiated plea agreement is effectively a two-step process. The first step is the agreement between the State and the defendant about the guilty plea. That agreement becomes binding when the defendant enters his or her plea. Both State and defendant are then bound by the terms of the negotiated plea agreement and are not permitted to take actions inconsistent with the agreement. The second step in the process involves the trial court's acceptance or rejection of the recommended punishment. Once the plea agreement is made, the recommended punishment becomes binding only if the trial court accepts the recommendation. If the court rejects the recommendation, the agreed punishment is not binding and the defendant may withdraw his or her plea. Tex.Code Crim. Proc. Ann. art. 26.13 (Vernon Supp.2006); *Zapata v. State,* 121 S.W.3d 66, 70 (Tex.App.-San Antonio 2003, pet. ref'd).

In addition, the court may not accept a plea of guilty unless it appears the defendant is mentally competent and the plea is free and voluntary. Tex.Code Crim. Proc. Ann. art. 26.13(b); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Kniatt v. State,* 206 S.W.3d 657, 664 (Tex.Crim.App.2006). However, even if the court determines the plea is voluntarily made, the trial court is not bound to accept the negotiated plea agreement. *See* Tex.Code Crim. Proc. Ann. art. 26.13 (court must admonish defendant that recommendation of prosecuting attorney as to punishment is not binding on court; court must inform defendant whether it will follow or reject such agreement in open court; should court reject any agreement, defendant shall be permitted to withdraw plea).

Counsel argues that the court, once it had chosen a reason (involuntariness of the plea) for refusing to accept a guilty plea, was necessarily bound to that reasoning, and we should therefore determine whether its conclusion was incorrect. We need not make such an analysis.

■ By long-standing authority, the trial court is "free in every or any case to refuse to allow plea bargaining or to reject a particular plea bargain entered into by the State and defense." *State ex rel. Bryan v. McDonald,* 662 S.W.2d 5, 9 (Tex. Crim.App.1983); *see Morano v. State,* 572 S.W.2d 550 (Tex.Crim.App.1978); *Davis v. State,* 130 S.W.3d 519, 522 (Tex.App.-Dallas 2004, no pet.); *Holland v. State,* 112 S.W.3d 251, 254 (Tex.App.-Austin 2003, no pet.); *see* Tex.Code Crim. Proc. Ann. art. 26.13.

It is within the court's authority to refuse to accept any negotiated plea agreement; in this case, the court chose not to accept this negotiated plea of guilty. The contention of error is overruled.

### Preservation of Search Issue

■ The general argument is that the canine sniff was improper because of delay or because there was not probable cause or even a reasonable suspicion that would justify allowing even an open-air sniff as a search. There was no motion to suppress, no suppression hearing, and no complaint raised to the introduction of evidence about the search, and the cocaine was admitted into evidence without objection. The issue was not preserved for appellate review. *See* Tex.R.App. P. 33.1. The contention is therefore overruled.

We affirm the judgment of the trial court.